**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PETER HENEEN,

     Plaintiff,

v.                                                                      Case No. 8:25-cv-138-TPB-LSG

DEPUTY JOSHUA JUDAH,
et al.,

     Defendants.
_____ /

**ORDER GRANTING DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendants' Motion to Dismiss Complaint."   (Doc. 17-1).   Plaintiff filed a response to the motion (Doc. 29) on July 19, 2025, and a notice of supplemental authority (Doc. 32) on September 15, 2025. Following a hearing on September 17, 2025, the Court converted the motion to dismiss into a motion for summary judgment.   *See* (Docs. 30; 34).   The parties filed supplemental legal memoranda on October 17, 2025, and reply memoranda on October 24, 2025.   (Docs. 35; 36; 37; 38).   Based upon the motion, response, argument of counsel, supplemental memoranda and replies, court file, and record, the Court finds as follows:

**Background**

This § 1983 case arises from Plaintiff Peter Heneen's arrest and criminal prosecution for transmitting threatening messages using his Facebook Messenger

account.    Plaintiff and Joshua Judah were both employed as Deputy Sheriffs by the Polk County Sheriff's Office on January 6, 2021.    In the state of Florida, Deputy Sheriffs are sworn law enforcement officers.    Plaintiff appears to have viewed a video relating to the political demonstration and ensuing events at the United States Capitol building in Washington, D.C. that same day.    Plaintiff's communications with his co-worker Judah concerning these events ultimately led to Plaintiff's criminal prosecution and the subsequent termination of his employment as a law enforcement officer.    Plaintiff alleges that his arrest and criminal prosecution based on these communications were improper and constituted a violation of his First and Fourth Amendment rights.

On January 6, 2021, Plaintiff sent to Judah over Facebook Messenger a video relating to the Capitol incursion during which a member of the Capitol Police fatally shot one of the intruders.    Plaintiff's message stated, "[t]hat was fucking murder!" and indicated that the Capitol Police agent should be shot: "Need to shoot that bitch back" and "[f]uck the feds[.]"    Judah, apparently misunderstanding "that bitch" to refer to the intruder, stated, "[a]nd they did[.]"    Plaintiff clarified, "[n]o shoot the fed[,]" "[n]eed to make the streets of DC run red with the blood of these tyrants[,]" and "[s]hould have drug those tyrants out into the streets and executed them[.]"

Judah cautioned Plaintiff that the expression of his views would be "why you will disappear one night without a trace[.]"    Plaintiff responded, among other things, "[b]ullshit I'll fucking kill bitches[,]" "[f]uck the federal government[,]" and the "FBI are corrupt they are all corrupt[.]"    Judah cautioned Plaintiff that he

would only "get" one or two government agents before being "taken out," to which Plaintiff responded, "[n]ah I got a plan for that at least I'll take them[.]"   He further stated he would "fucking kill them all" and that he had "[his] shit next to his bed" "[r]eady to go[.]"   Judah then warned Plaintiff that he would be putting the lives of his wife and children at risk.   Plaintiff responded that he would "slit their throats if they touch [his] family[,]" and that he would "make them suffer[.]"   When Judah stated that Plaintiff would not be able to do anything if he were already dead and that Plaintiff would "lose that fight," Plaintiff responded, "[u]nless you take the fight to them[,]" and further stated that Plaintiff would not be alone but would include "all other patriots and militias[,]" that "it's not over[,]" and that "any cop or military who stands in the way is the enemy."

On January 8, 2021, during Judah's next shift with the Sheriff's Office, Judah showed the Facebook conversation to his supervisor.   That same night a SWAT team arrived at Plaintiff's residence at 9:30 p.m. and served Plaintiff with administrative paperwork placing him on paid leave from the Sheriff's Office.   On January 11, 2021, Defendant Detective Steven Goreck opened an investigation into Plaintiff for possible violation of a Florida criminal statute, § 836.10, *F.S.*, which prohibits written threats to kill, do bodily injury, or conduct a mass shooting or an act of terrorism.   Search warrants were obtained relating to Plaintiff's Facebook account.   Law enforcement officers arrested Plaintiff on January 19, 2021, for violating § 836.10, *F.S.*   Additional search warrants were thereafter obtained for Plaintiff's vehicle and iPhone.   Plaintiff was released on bail later that day.

Page 3 of 17

On the same day, Plaintiff was charged by information with transmitting a threat in writing to conduct a mass shooting or an act of terrorism in a manner that would allow another person to view the threat, in violation of § 836.10, *F.S,* a second-degree felony with a potential sentence of fifteen years imprisonment.   In exchange for a *nolle prosequi* in the criminal action, Plaintiff entered into a felony diversion contract on August 1, 2021, with terms that included Plaintiff's resignation from the Polk County Sheriff's Office and waiver of the right to bring a related civil action.[1]   The State Attorney's Office dropped the criminal charges thereafter.

On January 17, 2025, Plaintiff filed this action against Defendants Judah, Goreck, Detective Michael Kennon, Detective Shannon Gaylord, and Sergeant David Lopez, in their individual capacities, and against Sheriff Grady Judd in his individual and official capacity.   Plaintiff asserts claims against each Defendant under § 1983 for false arrest in violation of the Fourth Amendment (Counts I-VI), for malicious prosecution in violation of the Fourth Amendment (Counts VII-XII), and for retaliatory arrest in violation of Plaintiff's right to freedom of speech under the First Amendment (Counts XIII-XVIII).   Plaintiff also asserts state law false arrest claims against Sheriff Judd in his official capacity for the actions of each of his co-defendants (Counts XIX-XXIII), and state law false arrest and malicious prosecution claims against Sheriff Judd, individually (Counts XXIV-XXV). Defendants have moved for summary judgment on all claims.

---

[1] Defendants' motion does not raise this as a defense.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Only the existence of a genuine issue of material fact will preclude summary judgment.   *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.   *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).   When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.   *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).   If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.   *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

**Analysis**

Defendants argue, among other things, that the existence of probable cause entitles them to summary judgment on Plaintiff's § 1983 claims and on his state law claims.   As discussed below, the Court agrees and grants summary judgment for Defendants.[2]

---

[2] Defendants also argue that the existence of probable cause entitles them to qualified immunity on Plaintiff's § 1983 claims.   Because Defendants primarily argue for summary

*Section 1983 Claims*

Section 1983 affords a private right of action to a person injured by government officials who have violated his constitutional rights, including the rights asserted by Plaintiff here under the First and Fourth Amendments.   *See* 42 U.S.C. § 1983.   Plaintiff's § 1983 claims against Defendants assert that his arrest and prosecution without probable cause violated his rights under the Fourth Amendment.   The existence of probable cause is fatal to these claims.   *See Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010) ("[T]he existence of probable cause defeats a § 1983 malicious prosecution claim."); *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (holding that the existence of probable cause bars a § 1983 false arrest claim).   Likewise, Plaintiff's claims alleging that his "retaliatory" arrest adversely impacted his First Amendment free speech rights also require that he prove there was no probable cause for his arrest.   *See Turner v. Williams*, 65 F. 4th 564, 581 (11th Cir. 2023) (noting that "the Supreme Court has instructed that a plaintiff 'must plead and prove the absence of probable cause for the arrest'" to allege a viable First Amendment retaliatory arrest claim) (*quoting Nieves v.*

---

judgment on the merits and because the Court's analysis and conclusion on the merits and on immunity would be identical, the Court will bypass the qualified immunity issue and rule on the merits.   *See, e.g.*, *Aversa v. United States*, 99 F.3d 1200, 1215 (1st Cir. 1996) ("A court may also bypass the qualified immunity analysis if it would be futile because current law forecloses the claim on the merits."); *see also Edwards v. Grubbs*, No. 24-12787, 2026 WL 706637, at *3 (11th Cir. Mar. 13, 2026) (holding that qualified immunity is not a jurisdictional defense); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1255 n.7 (11th Cir. 2020) ("Because we hold for the SBA on the merits, we need not and do not reach the sovereign immunity issue.").   The Court's determination on the issue of probable cause also makes it unnecessary to reach Defendants' other arguments.

*Bartlett*, 587 U.S. 391, 402 (2019)).   The Court therefore turns to the question of probable cause.

Legal Standard for Probable Cause[3]

Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."   *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quoting *Rankin*, 133 F.2d at 1435).

When determining whether an officer had probable cause, the Court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."   *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).   Importantly, "[b]ecause probable cause 'deals with probabilities and depends on the totality of the circumstances' . . . it is 'a fluid concept' that is 'not readily, or even usefully, reduced

---

[3] The authorities cited below refer to probable cause based on the knowledge of law enforcement officers at the time of the arrest.   This formulation requires an adjustment in the context of Plaintiff's Fourth Amendment malicious prosecution claims.   Such claims require proof of a seizure pursuant to constitutionally infirm legal process.   *See Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020).   Assuming *arguendo* that a seizure pursuant to legal process occurred when Plaintiff was in briefly in custody after the filing of charges (the only relevant legal process he identifies), then, consistent with Eleventh Circuit precedent, the information relevant to probable cause would necessarily be the information before the State Attorney's Office when it filed the charges.   *See id.* at 1162-63 (holding that the information relevant to probable cause in the malicious prosecution context was that presented to the judicial officer who issued an arrest warrant).   The standards described in the cases cited below otherwise apply equally to the malicious prosecution claims, as well as false arrest claims.

to a neat set of legal rules.'"   *Id.* at 57 (quoting *Pringle*, 540 U.S at 371; *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).   A "probability" standard necessarily means "something more than bare suspicion but less than a preponderance of the evidence at hand."   *J.J. v. State*, 312 So. 3d 116, 120 (Fla. 3d DCA 2020) (citing *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)).   It also follows that probable cause "'requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity.'"   *Wesby*, 583 U.S. at 57 (quoting *Gates*, 462 U.S. at 243-44).   In other words, probable cause "does not require that it be more likely than not the person arrested for a crime is actually guilty of it."   *Davis v. City of Apopka*, 78 F.4th 1326, 1334 (11th Cir. 2023).

Furthermore, a finding of probable cause is not barred by the existence of contradictory evidence.   *Scott v. City of Miami*, 139 F.4th 1267, 1274 (11th Cir. 2025).   Probable cause does not require that officers rule out a suspect's innocent explanation for suspicious facts.   *Wesby*, 583 U.S. at 61.   Nor does it require that law enforcement possess evidence as to every element of the crime.   *Davis*, 78 F.4th at 1335.   In particular, probable cause does not require specific evidence of a suspect's subjective intent when the evidence otherwise supports probable cause.   *Id.*   "[A]rrests are different from criminal prosecutions, and '[p]olice officers are not expected to be lawyers or prosecutors.'"   *Id.* (quoting *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007)).

In short, the existence of probable cause is not a high bar for law enforcement to hurdle.   *See Kaley v. United States*, 571 U.S. 320, 338 (2014).   When the facts of

a case "are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

<u>Probable Cause on the Facts Presented Here</u>

Plaintiff was charged with violating § 836.10, *F.S.* This statute prohibits the transmission of threats to conduct a mass shooting or act of terrorism:

> [A] person who makes, posts or transmits a threat in a writing or other record, including an electronic record, to conduct a mass shooting or an act of terrorism, in any manner that would allow another person to view the threat commits a felony of the second degree….

§ 836.10, *F.S* (2020).[4] The term "threat" is not defined in the statute, but courts have generally defined it as "an expression of intent to inflict evil, injury, or damage." *See, e.g., Puy v. State*, 294 So. 3d 930, 933 (Fla. 4th DCA 2020); *see also Smith v. State*, 532 So. 2d 50, 53 (Fla. 2d DCA 1988) (describing a threat as language that "reasonably may be construed to evince a serious expression of an intent to do harm"); *United States v. Ovadia*, No. 24-1425, 2025 WL 3122699, at *6 (11th Cir. Nov. 7, 2025) (noting that Black's Law Dictionary defines "threat" as "a communicated intent to inflict harm or loss on another or another's property").

Whether a statement constitutes a "threat" does not turn on whether the speaker had the intent or ability to carry out the act. *E.g.*, *Saidi v. State*, 845 So. 2d 1022, 1027 (Fla. 5th DCA 2003); *United States v. Baker*, 514 F. Supp. 3d 1369, 1381 (N.D. Fla. 2021). Florida law has held that to constitute a threat, the

---

[4] At the time of Plaintiff's arrest, the statute had last been amended in 2018. It was subsequently further amended by the Florida Legislature, but those changes have no impact on this case.

statement must be "sufficient to cause alarm in reasonable persons."   *See Puy*, 294

So. 3d at 933 (quoting *Smith*, 532 So. 2d at 53); *State v. Cowart*, 301 So. 3d 332, 335

(Fla. 5th DCA 2020) (quoting *Smith*, 532 So. 2d at 53).   But true threats are to be

distinguished from crude hyperbole.   *Smith*, 532 So. 2d at 53.[5]

Applying these principles here, probable cause existed if, under the totality of

the circumstances, there was a "probability" or a "substantial chance" that Plaintiff

transmitted messages containing a threat to commit a mass shooting or terrorism,

that is, a statement of intent to engage in such acts sufficient to alarm reasonable

persons.   The circumstances presented to law enforcement easily met this low bar.

First, the messages themselves, set forth in detail above, expressly advocated

physical violence involving mass casualties in response to the conduct of federal

authorities at the Capitol on January 6, 2021.[6]   Plaintiff indicated his own plan to

---

[5] Case law has interpreted § 836.10 and similar statutes as implicitly including a *mens rea* element requiring that the defendant intended his statement to communicate a threat, knew it would be viewed as a threat, or at least consciously disregarded a substantial chance that it would be viewed as a threat.   *See B.W.B v. State*, 374 So. 3d 40, 44-45 (Fla. 4th DCA 2023).   As noted above, however, probable cause does not require an arresting officer to have specific evidence of a suspect's subjective intent, which is an issue for the jury to determine in the criminal case based on all the facts and circumstances.   *See, e.g.*, *State v. Jones*, 642 So. 2d 804, 806 (Fla. 5th DCA 1994) (noting that "whether a defendant's statements and acts constitute threatening conduct is a question of fact generally reserved for the jury"); *State v. Major*, 30 So. 3d 608, 610 (Fla. 4th DCA 2010) ("Determining the intent of the defendant should be left to the trier of fact[.]").   Accordingly, reading a *mens rea* requirement into the statute does not change the Court's determination as to probable cause under the facts presented here.

[6] It is undisputed that the messages met the statutory requirements that the defendant transmitted a writing or other record and did so in a manner that another person could see it.   Plaintiff now admits that he sent the messages.   He argues, however, that depositions in his criminal case "revealed there was no evidence the messages were actually sent by [Plaintiff]."   For this proposition, he cites only an allegation in his own complaint.   The depositions are not before the Court and the record abundantly establishes that Defendants had probable cause to believe Plaintiff sent the messages.   The *only* question, then, is

act consistently with these sentiments if the authorities came after him, indicating that he had a plan and had the necessary weapons at hand to kill multiple law enforcement agents, that any "cop or military" who stood in the way was the enemy, and that he would not wait to be confronted and outnumbered by law enforcement, but he would "take the fight to them," along with other "patriots and militias."

In context, these statements do not appear to have been offered as a joke or as mere hyperbole in a general political debate or argument.   Plaintiff sent them in reaction to reports of political violence, including lethal political violence, at the Capitol, and the language he used suggested he was angered by what he saw. Importantly, Judah stated in his sworn interview that Plaintiff's statements were consistent with previous comments Plaintiff had made to Judah to the effect that the federal government was tyrannical, that it should be overthrown, and that there should be another civil war.   This suggests that Plaintiff's messages on January 6th, while indicating an escalation, were not isolated or uncharacteristic remarks, but were consistent with Plaintiff's preexisting political beliefs and therefore seriously intended.

The reaction of those who viewed the messages further supports their threatening nature.   Judah reported Plaintiff's messages to his superiors in the Sheriff's Office on his next shift two days later.   When Goreck interviewed Judah on January 11, 2021, Judah agreed with Goreck's description of Judah's reaction as

---

whether the messages Plaintiff sent could reasonably be interpreted as expressions of intent to engage in a mass shooting or terrorism.

one of "alarm."    The Sheriff's Office itself also appears to have been alarmed – it sent a SWAT team to Plaintiff's home on the same night Judah reported the statements to place Plaintiff on administrative leave and then opened an investigation on Plaintiff before formally arresting him on January 19, 2021.

The reasonableness of these reactions is supported by the extreme nature of the statements together with the fact that Plaintiff was himself a law enforcement officer who regularly carried weapons.    As Goreck's internal report regarding the investigation noted, "[Plaintiff] had in his care and possession numerous agency-issued firearms, in addition to his privately owned-firearms.    He has received specialized training on the use of a rifle and has regularly shown proficiency in the use of firearms."    Plaintiff's anger was directed in particular at the federal government, and Goreck noted that Plaintiff "would not have to travel beyond Polk County to effect [sic] potential victims under the employment of the federal government in an act of terrorism."    Given the content of the messages and the context described above, it appears that the concerns of Judah and the Sheriff's Office were reasonably grounded.

Recognizing the delicate nature of a case like this, on the very first day of his investigation, Goreck took the highly unusual step of meeting with the elected State Attorney, the felony intake director, and the executive director "to ensure that the conduct [Goreck] was investigating did in fact violate" the statute.    The State Attorney's Office advised Goreck that the messages in question were consistent with

a violation of the statute.   And the State Attorney's Office ultimately filed criminal charges based on the messages.

Finally, Defendants have presented unrebutted evidence that the Sheriff's Office provided the messages exchanged between Plaintiff and Judah in their entirety to *five* different Tenth Judicial Circuit judges who all issued search warrants based on the messages.[7]   This necessarily means that each of those *five* different judges found probable cause to believe that Plaintiff's messages violated the statute.   *See State v. Abbey*, 28 So. 3d 208, 211 (Fla. 4th DCA 2010) (explaining that for a judge to issue a search warrant, the supporting affidavit must show both that a particular person has committed a crime and that evidence relevant to the crime is likely to be found at the location to be searched).   While not dispositive, this evidence further supports Defendants' contention that their actions were supported by probable cause.

In light of the foregoing, the Court finds Plaintiff's arguments that Defendants lacked probable cause unpersuasive.   Plaintiff argues, for example, that Judah was not alarmed and did view not the messages as a threat, as opposed to political hyperbole, but the only support he offers for this is the fact that Judah did not report the messages to the Sheriff's Office until his next shift two days later. But Judah's timing is consistent with viewing the messages as a threat, even if not

---

[7] It is undisputed that Goreck obtained a warrant to search Plaintiff's Facebook account from Circuit Judge Melissa Gravitt; a warrant to search Judah's Facebook account from Circuit Judge Reinaldo Ojeda; a warrant to search Plaintiff's residence from Circuit Judge Torea Spohr; a warrant to search Plaintiff's vehicle from Circuit Judge Donald Jacobsen; and a warrant to search Plaintiff's mobile phone from Chief Circuit Judge Ellen Masters.

an immediate threat, and in any event, as explained above, the existence of exculpatory evidence does not negate the existence of probable cause. *Scott*, 139 F. 4th at 1274. The timing of Judah's report would at most create an issue for the jury in a criminal trial of Plaintiff. *See Puy*, 294 So. 3d at 933 (affirming denial of motion to dismiss criminal charges and collecting cases holding that whether a statement is a threat is a fact question for the jury).

Plaintiff also argues that there was no probable cause because his statements did not threaten the recipient, Judah, or one of his family members. But Plaintiff was charged with the crime of transmitting a threat "to conduct a mass shooting or an act of terrorism," which does not require the threat to be made directly to the recipient or a member of his family. Instead, the statute prohibits the act of transmitting such a threat, "regardless of whether it is directed to an individual." *Id.*

Plaintiff argues that the complaint affidavit signed by Goreck and Lopez tainted the State Attorney's Office's decision to charge Plaintiff because it omitted the context for some of Plaintiff's statements, which included Judah warning Plaintiff that government agents would cause him to "disappear one night without a trace[.]" But even taking the omitted material into account, probable cause still existed for the reasons stated above. *See Madiwale v. Savaiko,* 117 F.3d 1321, 1326-27 (11th Cir. 1997) ("[E]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause."). The fact that some of Plaintiff's statements were offered in

response to Judah's warning about potential law enforcement action may certainly be relevant to the issue of whether the statements constituted threats. *See, e.g., Baker*, 514 F. Supp. 3d at 1381. But it is not dispositive because "a statement may constitute a true threat even if it is conditional." *Id.* (quoting *United States v. Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015)); *see also United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007) ("We are likewise unpersuaded by Defendant's argument that his threats against the process server were not true threats because they were conditioned on her appearing near him or his family again."). Moreover, as noted above, it is undisputed that the entirety of Plaintiff's exchange with Judah was presented to the State Attorney's Office, which filed the information charging Plaintiff with violating § 836.10, *F.S.*

Based on the foregoing, the Court concludes that probable cause existed for Plaintiff's arrest and prosecution, and therefore his constitutional rights under the First and Fourth Amendment were not violated. Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1983 claims.

### State Law Claims

In Counts XIX through XXV, Plaintiff asserts Florida law claims against Sheriff Judd for false arrest and malicious prosecution, both in his individual capacity and in his official capacity under a theory of vicarious liability for the actions of the other Defendants. The existence of probable cause bars Florida law claims for false arrest and malicious prosecution. *Scott*, 139 F.4th at 1279-80. For the reasons set forth above, the Court finds as a matter of law on the

undisputed facts that probable cause existed to arrest and prosecute Plaintiff.[8] Accordingly, his state law claims against Sheriff Judd are barred.

### Conclusion

As a matter of law, and based on the undisputed facts, the totality of the circumstances supports the conclusion that probable cause supported the arrest and prosecution of Plaintiff for violating § 836.10, *F.S.* Defendants are therefore entitled to summary judgment on all counts.

Accordingly it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion to Dismiss Complaint" (Doc. 17-1), which the Court construes as a motion for summary judgment, is hereby **GRANTED**.

2. The Clerk is **DIRECTED** to enter final judgment against Plaintiff Peter Heneen, and in favor of Defendants Deputy Joshua Judah, Detective Steven Goreck, Detective Michael Kennon, Detective Shannon Gaylord, and Sergeant David Lopez in their individual capacities, and in favor of Sheriff Grady Judd, individually and in his official capacity.

3. Following entry of judgment, the Clerk is directed to terminate any

---

[8] The standard for probable cause is the same under both federal and Florida law. *See Rankin*, 133 F.3d at 1435.

pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, on this 31st day of March, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE